IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JEFFREY PETER DATTO, Ph.D.,

    Plaintiff,

v.

THE FLORIDA ATLANTIC
UNIVERSITY BOARD OF TRUSTEES,
JOHN DOES 1-5,
    Defendants.
_____/

JURY TRIAL DEMANDED



FILED BY _____ D.C.
MAR 30 2020
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## COMPLAINT

I, Jeffrey P. Datto, Ph.D., Plaintiff in the above styled cause, sue the Defendant The Florida Atlantic University Board of Trustees ("FAU-BOT") and John Does 1-5.

This action is filed under 2 federal laws: Title II and Title V of the Americans with Disabilities Act, 42 U.S.C. 1201 et seq., ("ADA"), the Rehabilitation Act of 1973 § 504, 29 U.S.C.A. § 794 ("Rehab Act"), and the Rehab Act anti-retaliation regulation, 34 C.F.R. § 100.7(e). In support of this complaint and demand for jury trial, Plaintiff avers, under the penalty of perjury, as follows:

### Parties

1.     Plaintiff, Jeffrey P. Datto, Ph.D. ("Plaintiff" or "Datto"), is a competent adult over 18 who resides in Hialeah, Florida.

1

2. Defendant, FAU-BOT, has a college of medicine located at 777 Glades Road Boca Raton, FL 33431, and is a public instrumentality of the State of Florida with the power to sue and be sued. Fla. Stat. s. 1001.72(1).

3. Defendants, John Does 1-5, are unidentified individuals making retaliatory/discriminatory decisions on behalf of the Florida Atlantic University Charles E. Schmidt College of Medicine ("FAU").

## Jurisdiction and Venue

4. Plaintiff brings this complaint under 2 federal laws: the ADA and the Rehab Act.

5. This Court has jurisdiction due to federal claims under the ADA and Rehab Act.

## Statement of the Claims

### Facts

6. Plaintiff was a former MD PhD student on full scholarship at Thomas Jefferson University ("TJU"), a sister Association of American Medical Colleges ("AAMC") medical school of FAU, who was dismissed 3 days prior to graduation.

7. At that time, he was on a significant amount of medication to treat bipolar disorder, which contributed to a severe learning and thinking disability that resulted in his dismissal.

8. Plaintiff had a continual span of taking psychiatric medications from 5/21/2003 through summer 2006, so for over 3 years.

9. He was prescribed during this time period: Serzone, Paxil, Abilify, Klonopin, Neurontin, Geodon, Ambien, Effexor, Xenadrine, Depakote, Rameron, Wellbutrin, Zyprexa, Zoloft, Lithium, Inderal, and Topomax.

2

10. The combination of medications he was taking together for the longest amount of time over those 3+ years was Lithium, Zyprexa, and Zoloft.

11. That combination of medications made him sleep 12+ hours a day, gain a lot of weight, have a significant tremor, and, in conjunction with an underlying mental illness, caused significant impairments in his learning, thinking, and processing speed of information compared to the general population.

12. Although there was an agreement in place to reinstate the Plaintiff at TJU once he was medically cleared to return, TJU went back on that agreement.

13. Plaintiff engaged in lengthy litigation pro se against TJU, claiming violation of the ADA and Rehab Acts.

14. That litigation ended in a substantial settlement, for which the amount and conditions were proposed by the Magistrate Judge Elizabeth T. Hey and were accepted by both parties.

15. Judge Hey stated to Plaintiff several times that the settlement she proposed was fair and he could use the money and reestablish himself elsewhere.

16. She also told Plaintiff that he was not allowed to discuss that settlement with anyone before having to make his decision to sign it or not.

17. After settling that lawsuit, Plaintiff went through considerable steps to again be a qualified applicant to medical school.

18. He received a score of 32 upon retaking AAMC'S Medical College Admission Test ("MCAT"), since a recent score within the past 3 years was needed.

19. This MCAT score of 32 met/exceeded the qualifications of those who matriculated at FAU whose average score Plaintiff believes was a 31.

20. Plaintiff's undergraduate GPA from Johns Hopkins University was a 3.82, which exceeded the qualifications at FAU for the students they matriculate.

21. Plaintiff has significant research experience, clinical experience, community service, and volunteer work of which the quality and quantity meets/exceeds the expectations for those whom FAU matriculates.

22. Plaintiff has gotten 10 letters of recommendation from prestigious faculty, staff, students and members of the community, which meets the qualifications for the students that FAU matriculates.

23. The Plaintiff meets/exceeds all the qualifications needed for admission to FAU.

24. In the matter with TJU, TJU claimed through their lawyers and experts that because of the seriousness of the disability bipolar disorder, and Plaintiff's lack of insight into having this disability, Plaintiff would not be able to be successful as a medical student and future clinician.

25. FAU is influenced by the actions of TJU and also likely perceive Plaintiff to have the disability bipolar disorder or some other serious mental illness disability that prevented his completion of medical school at TJU.

26. In summer of 2015, Plaintiff applied to FAU through the American Medical College Application Service ("AMCAS").

27. Although he did not want to disclose this information, Plaintiff was required to explain the institutional action taken against him at TJU.

28. Thus, he had to disclose the diagnosis of bipolar disorder in his personal statement in this initial application.

29. After receiving Plaintiff's AMCAS application, FAU then sent Plaintiff their personal secondary application, which required payment of an additional fee.

30. Plaintiff filled out FAU's secondary application, paid the second required fee to FAU, and submitted to FAU their respective application.

31. Following successful completion of this required application process, FAU denied Plaintiff's application.

32. Being a small sized class, Plaintiff believes their review of his application also involved a google search of Plaintiff's name, and on the first page of the search they found out about Plaintiff's litigation against TJU under the ADA and Rehab Act.

33. Although FAU was not willing to provide Plaintiff any feedback, another state medical school, University of Central Florida ("UCF"), provided feedback.

34. UCF specifically said to Plaintiff, "You do not need to prove anything to us. You were one of ~425 to receive an interview of just over 5,100. As you continue to display your medical motivation and humanism via volunteering you should one day receive the reward you deserve."

35. Plaintiff followed through with this feedback, performed additional meaningful volunteering, shadowing, and community service, and reapplied to the medical schools he was most interested in attending and believed he had the best chance of matriculation, which included FAU.

36. However, Plaintiff was rejected again by FAU with no specific reasons why.

37. Plaintiff is a home owner with two daughters, a 2 1/2-year-old and a 1-year-old, and has been a member of this South Florida community in good standing for the past 9 years.

38. Plaintiff is willing to do whatever is wanted from him to have an opportunity to complete his medical education at FAU.

39. Recently, Plaintiff has tried again to communicate with General Counsel of FAU to find out the reason for his denials and if there is anything he can do to overcome the issues they had with his applications.

40. They have not responded to his inquiry.

## COUNT I – ADA- TITLE II – DISPARATE TREATMENT

### Datto vs. FAU-BOT and John Does 1-5

41. Plaintiff brings forth this claim pursuant to Title II of the ADA.

42. Title II of the ADA, 42 U.S.C. §§ 12131-12165, legislates against various forms of discrimination by a public entity. A "public entity," in turn, is defined, in relevant part, as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C.A § 12131(1)(B).

43. FAU-BOT is a public instrumentality of the State of Florida with the power to sue and be sued. Fla. Stat. s. 1001.72(1).

44. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A § 12132.

45. Plaintiff is a qualified individual whose denial to FAU was due to discrimination on the basis of a disability.

46. His dismissal from TJU was held against him, which was due to a disability.

47. The combination of medications he was on at that time made him sleep 12+ hours a day, have a significant tremor, gain a lot of weight, and, in conjunction with an underlying mental illness, caused significant impairments in his learning, thinking, and processing speed of information compared to the general population.

48. Plaintiff has several medical reports substantiating this fact.

49. Plaintiff received a substantial settlement from TJU because of this violation of the ADA.

50. FAU should not be allowed to perform the same discriminatory act, holding against him a dismissal due to a disability, without penalty.

51. Plaintiff is able to perform the essential functions of a medical student.

52. Prior to being prescribed excessive medications to treat an episode of bipolar disorder, Plaintiff was performing well as a medical student.

53. Prior to being prescribed excessive medications to treat an episode of bipolar disorder, Plaintiff never failed any tests.

54. Plaintiff passed all his medical licensing exams, USMLE Step 1, USMLE step 2 Clinical Skills (CS), and USMLE step 2 Clinical Knowledge (CK) on his first attempt.

55. "The United States Medical Licensing Examination ® (USMLE®) is a three-step examination for medical licensure in the U.S. The USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that are important in health and disease and that constitute the basis of safe and effective patient care." ( https://www.usmle.org/).

56. Plaintiff also received several honors and excellent grades in his clinical years as a medical student, which document his ability to perform the essential functions of a

medical student, as well as receiving several letters of recommendation from medical preceptors in support of his residency applications.

57. By passing USMLE Step 1, Step 2 CS, and Step 2 CK, Plaintiff has demonstrated he can perform the essential functions of a medical student.

58. Additionally, he passed USMLE Step 1 while medication free, with a score higher than the TJU and national averages (it likely would have been higher than FAU's average, but FAU's medical school was not in existence at this time).

59. Plaintiff furthermore matched in a transitional year internship and a separate anesthesia residency program, which though he never got to start also demonstrate that he is able to perform the essential functions of a medical student.

60. Moreover, by being accepted for these jobs to be an incoming physician at 2 separate hospitals, after an interview and thorough review of his record, these hospitals clearly believed Plaintiff could perform not only the essential functions of a medical student, but also the essential functions of a physician working for them.

61. Plaintiff was also 1 of 4 students in the country to be awarded a prestigious NIH F30 grant that not only paid towards his tuition and research expenses, but also provided him a stipend salary while both a graduate and medical student.

62. Plaintiff has the disability bipolar disorder or a variant thereof that meets all the criteria for being Bipolar except that his manic / hypomanic episodes maybe a result of lithium withdrawal syndrome / the permanent effect of chronic prolonged intermittent hypoxia.

63. When Plaintiff is in the depressive phase of his illness, he is substantially limited in his ability to learn, think, and concentrate.

64. Also, when Plaintiff is severely depressed, he sleeps excessively and it is difficult for him to get out of bed.

65. Also, when Plaintiff is severely depressed, he is substantially limited in his interactions with others because he does not want to be around others when in this state, and because since this state affects his thinking and concentration it is difficult for him to hold a conversation.

66. When Plaintiff is in the hypomanic/manic phase of his disability, he sleeps only 2 hours a night, and when he wakes up he is not tired and full of energy.

67. In this state, he is unable to concentrate on what people are saying to him and his thoughts are racing and jumping from 1 idea to the next.

68. In this state, he is easily distracted, which substantially limits his interactions with others.

69. Before realizing he had this illness, he would get very irritable and frustrated with people who were doing things which were improper.

70. Now, with the realization of things that trigger the episodes and through reflection of what he has learned through a significant amount of past treatment and life experience, he has been able to better manage his disability.

71. Additionally, he has relied on Christianity and says the Lord's Prayer daily, which has helped him control his disability.

72. He also takes vitamins, supplements, and fish oil, which likely help as well.

73. Additionally, he takes baths at night, exercises, uses the sauna, and does other stress relieving activities to help ensure his sleep is maintained at an appropriate amount, which helps prevent slipping into a manic/depressive episode.

74. However, he still has recurring episodes, especially when he is placed in a very stressful position that he is not adequately prepared for.

75. Plaintiff will agree to any treatment (which includes pharmaceutical treatment if deemed necessary) and monitoring, if he is given an opportunity to complete his medical education at FAU.

76. It is likely FAU's perception that he will continue to have problems due to the disability bipolar disorder, as this was the perception of their sister AAMC medical school TJU, and thus he is not a qualified applicant.

77. Additionally, they do not want to take someone into their class knowing that he has bipolar disorder and that they would need to accommodate him throughout his stay there.

78. Due to the aforementioned facts, FAU-BOT is a covered entity under the Act and has violated Plaintiff's rights by discriminating against him based upon a disability in their denial of his medical school applications.

79. This violation of Title II of the ADA has resulted in a significant delay in Plaintiff's career as a physician scientist, loss of wages, loss of reputation, emotional distress, and financial losses due to application associated costs.

### COUNT II – Rehab Act – DISPARATE TREATMENT

### Datto vs. FAU-BOT

80. Plaintiff brings forth this claim pursuant to the Rehab Act.

81. Under the Rehab Act, "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected

10

to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794(a).

82. FAU-BOT is a "program or activity" under the Rehab Act because it is a corporation that federal assistance is extended to as a whole. 29 U.S.C. § 794(b)(3)(A)(i).

83. FAU-BOT is also a "program or activity" under the Rehab Act because they administrate a University. 29 U.S.C. § 794(b)(2)(A).

84. FAU-BOT, as a whole, receives Federal financial assistance from federal grants through the National Institutes of Health, Department of Defense, and other federal funding sources.

85. The remainder of the allegations in support of this claim is the same as the disparate treatment ADA claim (¶¶ 45-78) and Plaintiff incorporates them herein by this reference.

86. This violation of the Rehab Act has resulted in a significant delay in Plaintiff's career as a physician scientist, loss of wages, loss of reputation, emotional distress, and financial losses due to application associated costs.

### COUNT III – AMERICANS WITH DISABILITIES ACT- TITLE II
### FAILURE TO ACCOMMODATE A DISABILITY

### Datto vs. FAU-BOT

87. FAU-BOT is a public instrumentality of the State of Florida with the power to sue and be sued. Fla. Stat. s. 1001.72(1).

88. As for failing to accommodate this disability, the Plaintiff is a qualified applicant who has a mental illness disability that, when not under control, substantially limits his ability to think, learn, sleep, and interact with other people.

89. He also has been diagnosed with bipolar disorder and with a severe learning and thinking disability while on the medications to treat bipolar disorder.

90. He also has an educational record of having the disability bipolar disorder.

91. Plaintiff requested the ability to be interviewed to be able to present to them his medical reports establishing that a disability affected his performance at the end of medical school and address any other concerns they have of him and why he currently still wants to attend their medical school.

92. Plaintiff was denied this request.

93. FAU-BOT also has not been willing to engage in any interactive process with Plaintiff to discuss what would be reasonable accommodations that would enable some kind of pathway that would allow him an opportunity based on merit to enroll at FAU.

94. This violation of Title II of the ADA has resulted in a significant delay in Plaintiff's career as a physician scientist, loss of wages, loss of reputation, emotional distress, and financial losses due to application associated costs.

**COUNT IV – Rehab Act - FAILURE TO ACCOMMODATE A DISABILITY**

**Datto vs. FAU-BOT**

95. Plaintiff brings forth this claim pursuant to the Rehab Act.

96. FAU-BOT is a "program or activity" under the Rehab Act because it is a corporation that assistance is extended to as a whole. 29 U.S.C. § 794(b)(3)(A)(i).

97. FAU-BOT is also a "program or activity" under the Rehab Act because FAU-BOT administrates a University. 29 U.S.C. § 794(b)(2)(A).

98. FAU-BOT, as a whole, receives Federal financial assistance from federal grants through the National Institutes of Health, Department of Defense, and other federal funding sources.

99. The remainder of the allegations in support of this claim is the same as the ADA failure to accommodate claim (¶¶ 88-93) and Plaintiff incorporates them herein by this reference.

100. This violation of Rehab Act has resulted in a significant delay in Plaintiff's career as a physician scientist, loss of wages, loss of reputation, emotional distress, and financial losses due to application associated costs.

## COUNT V – AMERICANS WITH DISABILITIES ACT – TITLE V

### Datto vs. FAU-BOT and John Does 1-5

101. Plaintiff brings forth this claim pursuant to Title V of the ADA.

102. Title V of the ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

103. Plaintiff opposed discrimination made unlawfully against him by this chapter by filing a claim in federal court under the ADA and Rehab Act against TJU's School of Medicine.

104. TJU is a sister AAMC medical school of FAU.

105. FAU-BOT is forever refusing Plaintiff admission to FAU because he sued TJU.

106. Plaintiff was forced to disclose the events that happened at TJU that resulted in his dismissal in his AMCAS application.

107. These events are very controversial and drew attention to his application, and thus FAU, as part of holistic review, most likely performed a google search of Plaintiff's name and on the first page of that search found out about Plaintiff's lawsuit against TJU under the ADA and Rehab Act.

108. Alternatively, if the holistic review of his first application was denied for a non-discriminatory/non-retaliatory reason, the need to demonstrate more medical motivation and humanism via additional volunteering as pointed out to him by UCF's school of medicine, Plaintiff fixed this deficit from his initial application.

109. He then sent a clarifying letter disclosing his past litigation against TJU and his application was denied again without any specific explanation why.

110. John Does 1 through 5 are unidentified persons responsible for deciding and enforcing the retaliatory acts of FAU.

111. FAU-BOT and John Does 1 through 5 are retaliating against Plaintiff in their denial of his applications to their medical school and refusal to offer any reasonable accommodations that will help him overcome this denial decision due to his disability.

112. This violation has resulted in a significant delay in Plaintiff's career as a physician scientist, loss of wages, loss of reputation, emotional distress, and financial losses due to application associated costs.

### COUNT VI – Rehab Act ANTI-RETALIATION

### Datto vs. FAU-BOT

113. Plaintiff brings forth this action pursuant to the Rehabilitation Act anti-retaliation regulation, 29 U.S.C. § 794(a) (codifying Section 504).

114. The Rehabilitation Act's anti-retaliation regulation, which incorporates the anti-retaliation provision of Title VI of the Civil Rights Act, provides that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering with any right or privilege secured by [the Act], or because he has made a

complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing ..." 34 C.F.R. § 100.7(e).

115. FAU-BOT is a recipient of federal funds.

116. FAU-BOT, as a whole, receives Federal financial assistance from federal grants through the National Institutes of Health, Department of Defense, and other federal funding sources.

117. The remainder of the allegations in support of this claim is the same as the ADA retaliation claim (¶¶ 103-111) and Plaintiff incorporates them herein by this reference.

118. This violation of the Rehab Act has resulted in a significant delay in Plaintiff's career as a physician scientist, loss of wages, loss of reputation, emotional distress, and financial losses due to application associated costs.

**Prayer for Relief**

119. **WHEREFORE**, Plaintiff, Jeffrey Peter Datto, Ph.D., requests judgment in his favor and against FAU-BOT (All Counts) and John Does 1-5 (Counts I & V) for damages for the maximal amount allowed by the ADA and Rehab Act, back pay, front pay, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, application costs, and any other intangible injuries, punitive damages, reasonable attorney fees, litigation expenses and costs, injunctive relief which would allow Plaintiff to have an opportunity based on merit to complete his medical education at FAU, and Plaintiff also requests any other relief, including additional injunctive relief, that this Court deems appropriate.

Respectfully Submitted,

Date: 3/26/2020

Jeffrey P. Datto, Ph.D.
Pro Se Plaintiff
3352 w 98th pl
Hialeah, FL 33018
(786) 593-1271
JPDatto@gmail.com

Jeffry
3358 w 98th pl
Hialeah, FL 33018

U.S. POSTAGE PAID
FCM LG ENV
HIALEAH, FL
33016
MAR 26, 20
AMOUNT
$5.15
R2305M147961-13

Paul G. Rogers Federal Building and US. Court House
701 Clematis Street, Room 202
West Palm Beach, FL 33401

Attention Clerk's office



7019 1640 0000 2619 1566

CERTIFIED MAIL®
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7019 1640 0000 2619 1566